IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

KIRE McCALVIN,                            §
TDCJ-CID # 1100544,                       §
                    Petitioner,           §
                                          §
v.                                        §          C.A. NO. C-07-54
                                          §
NATHANIEL QUARTERMAN,                     §
DIRECTOR, TDCJ-CID,                       §
                    Respondent.           §

## MEMORANDUM AND RECOMMENDATION
## TO GRANT RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Petitioner is an inmate in the Texas Department of Criminal Justice,

Correctional Institutions Division ("TDCJ-CID"), and currently is incarcerated at

the Robertson Unit in Abilene, Texas.  Proceeding pro se, he filed this habeas

corpus petition pursuant to 28 U.S.C. § 2254 on January 30, 2007.  (D.E. 1).  On

May 24, 2007, respondent filed a motion for summary judgment arguing that

petitioner has failed to meet his burden of proof, his claims lack merit, and that his

petition is time barred.  (D.E. 18).  For the reasons stated herein, it is respectfully

recommended that the respondent's motion for summary judgment be granted.

### I.  JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to

28 U.S.C. §§ 2241, 2254, which provide that jurisdiction is proper where the

inmate is confined, or where the conviction was obtained.  Wadsworth v. Johnson, 235 F.3d 959, 961-62 (5th Cir. 2000).  Petitioner was convicted by the 117th Judicial District Court of Nueces County, Texas, and therefore, jurisdiction is proper in this Court.

## II.  BACKGROUND

### A.    Procedural Background.

Respondent has lawful custody of petitioner pursuant to a judgment and sentence of the 117th Judicial District Court of Nueces County, Texas, in cause number 00-CR-4368-B, styled State of Texas v. Kire McCalvin, Jr.  Ex parte McCalvin, App. No. WR-66,679-01, at 109.  In April 2002, a jury found him guilty of capital murder and pursuant to Texas law, the court automatically sentenced him to life confinement in the TDCJ-CID.  Id.

Petitioner's appellate counsel submitted an Anders[1] brief contending that petitioner's appeal was wholly frivolous and without merit.  McCalvin v. State, No. 13-02-274-CR, 2004 WL 5050886, at 1 (Tex. App. Aug. 26, 2004) (unpublished). Petitioner submitted a pro se brief to the appellate court, which affirmed the trial court's judgment.  Id. at 2, 6.  He then filed a petition for discretionary review with the Texas Court of Criminal Appeals, which refused his petition on September 26,

---

[1] Anders v. California, 386 U.S. 738, 744 (1967).

2005.  McCalvin v. State, PD-1880-04 (Tex. Crim. App. 2005).  On November 12,

2006, he filed a state application for habeas relief.  Ex parte McCalvin, App. No.

WR-66,679-01, at 11.  The Texas Court of Criminal Appeals denied his application

without written order based on the findings of the trial court on January 17, 2007.

Id. at cover.  He then filed this action on January 30, 2007.  (D.E. 1, at 13).

B.     **Factual Background.**

In the early morning hours of December 26, 2000, petitioner stabbed Harold

Meiwes, the victim, to death during the course of a robbery.  On Christmas Day,

petitioner and his acquaintances were going back and forth between Aransas Pass

and Port Aransas to buy cocaine.  State v. McCalvin, No. 00-CR-4368-B,

Reporter's Record, vol. 8, at 98-109.[2]  The victim lived in Port Aransas and was

employed as a subcontractor installing ceramic tile and other flooring.  6 R.R. 23-

26.  A day or two prior to Christmas, he had been paid between $1,000 and $1,100

for his work.  Id. at 25.

At his trial, petitioner testified that on the night of the incident, he was at the

victim's residence, smoking crack, drinking, and watching television.  8 R.R. 107-

109.  He and the victim were waiting for petitioner's cousin, Thomas Mitchell, to

---

[2] The Reporter's Record will be designated "R.R." with the volume number preceding the designation and the page number following the designation.

return to the residence with more drugs.  Id.  According to petitioner, his cousin

did not return with the drugs, and the victim became angry.  Id. at 111-12.  He

claims that the victim then refused to let him leave the residence before attacking

him.  Id. at 120-21.  He stated that the victim picked up a knife, but that he took it

away from him and then stabbed the victim in self-defense.  Id. at 122.

Petitioner testified that after stabbing the victim, he took the victim's money.

Id. at 124.  He then changed into some of the victim's clothes, including jeans that

were too small for him, put his bloody clothes into a neighbor's trash can, and left.

Id.  He then went to a nearby Circle K.  Id. at 125.

Thomas Miller indicated that he worked the graveyard shift at the Circle K

on December 26, 2000 from 12:00 a.m. to 7:00 a.m.  6 R.R. 32-34.  He testified

that he saw petitioner at the store that night, and that he was "skittish" and wearing

clothes that did not fit him, and carrying coins in a bag.  Id. at 35-36.  Mr. Miller

told him that he could not go into the store, and petitioner told him that someone

had robbed him.  Id. at 37-38.  Anthony Williams, Mr. Miller's friend,

corroborated his testimony.  6 R.R. 42-57.  Petitioner told Mr. Williams that two

men had robbed him of $3,000 and offered to pay him for a ride to Corpus Christi.

Id.

Edmund Gaethke, a taxicab driver, testified that he picked up petitioner, who

4

appeared to be on drugs, from the Circle K and drove him to Aransas Pass.  6 R.R.

60-62.  Once in Aransas Pass, petitioner had the cab driver pick up his cousin,

Arthur, and told his cousin to buy him more drugs.  8 R.R. 126.

      Petitioner's statements to police officers before his trial were inconsistent,

and his narrative of the events changed multiple times before his trial.  See 8 R.R.

134-146.  At trial, he admitted that he told multiple lies to law enforcement.  Id. at

134-38.  However, witnesses who were with him and the victim during the time

that the events leading up to and following the killing occurred testified more

consistently.

      Thomas Mitchell, who knew petitioner before the incident, testified that a

group, which included himself and petitioner, went to Port Aransas to the victim's

house on the night that the killing occurred.  6 R.R. 70-76.  They stayed at the

house for about thirty-five to forty minutes doing drugs.  Id. at 78.  The victim

opened his wallet to pay for the drugs, and Mr. Mitchell saw a lot of money in the

wallet.  Id. at 80-81.  He testified that the victim wanted more drugs, and

eventually, the group left petitioner alone with the victim while they went to get

more drugs.  Id. at 82-86.  Petitioner stayed behind to get $100 from the victim.  Id.

at 86.

      Robert Ayala testified to the same course of events, but also testified that

when he and two others went back to the victim's house later, they found him dead.  6 R.R. 126.  They did not call police, but instead went back to Aransas Pass. Id. at 127.

Melissa Davis testified that in the early morning of December 26, 2000, petitioner arrived at her boyfriend's house in a taxicab, wearing clothes that did not fit, and with a cut on his hand.  6 R.R. 139-42.  He told her that someone tried to rob him, but did not get his money.  Id. at 144.  Petitioner also told Virginia Guerra, whose house he also visited that night, that he had been robbed.  7 R.R. 12-19.  She saw him with two one-hundred dollar bills and a fifty dollar bill and some change, and testified that he had a rag around his hand and was wearing clothes that did not fit him.  Id.  The next morning, when police came to the house, petitioner quickly left.  Id. at 28.

Eldon Glenn testified to the same course of events, but also testified that after returning to Port Aransas after seeing the victim's body, petitioner stated that he was "a stone cold killer."  7 R.R. 33-45.  Kevin Staley also testified to the same events, but did not hear petitioner state that he was a "stone cold killer."  8 R.R. 13-26.

The court's instructions to the jury included instructions on capital murder, murder, and self-defense.  9 R.R. 7-13.  After deliberating, the jury found

6

petitioner guilty of capital murder.  Id. at 70.  The court then sentenced him to a life sentence in TDCJ-CID.  Id. at 71.

### III.  PETITIONER'S ALLEGATIONS

Petitioner raises the following claims in his petition for habeas relief:

(1)  He claims that he received ineffective assistance of counsel because counsel:

    (a)  failed to properly investigate his case, (D.E. 1, at 9), and interview witnesses before trial, id. at 10;

    (b)  failed to cross-examine fifteen of the state's twenty-one witnesses, id.;

    (c)  improperly withdrew a motion to suppress, id.;

    (d)  failed to give petitioner notice that he would testify and failed to prepare him to testify, id.;

    (e)  failed to object to the admission of extraneous offenses, id.;

    (f)  failed to request an "extraneous offense instruction" in the charge, id.; and

    (g)  failed to obtain Dr. Sam Hill as an expert witness, id.;

(2)  He claims that the jury was prejudiced against him because evidence regarding extraneous offenses was admitted, id. at 9;

7

(3)     He claims that the life-sentence, which was automatically imposed

following his conviction, is unconstitutional because:

(a)     it did not give the jury an opportunity to consider mitigating

circumstances, id.;

(b)     it violates the equal protection clause because it creates a

special class of defendants who have no opportunity to be

sentenced by a jury, id. at 11;

(c)     it violates his due process rights, id.;

(d)     it violates the Eighth Amendment's prohibition of cruel and

unusual punishment, id.; and

(e)     it violates the privileges and immunities clause of the

Constitution, id.

## IV.  EXHAUSTION OF STATE REMEDIES

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), a federal writ of habeas corpus from an inmate in state custody shall

not be granted unless the inmate has exhausted his remedies at law in the state

courts, or there is an absence of state court remedies or circumstances that render

state remedies insufficient to protect the individual's rights.  28 U.S.C.

§ 2254(b)(1).  Respondent does not dispute that petitioner has adequately

exhausted his state remedies.  (D.E. 18, at 5).

## V.  STANDARD OF REVIEW

**A.     Federal Habeas Corpus Standard of Review Pursuant to the AEDPA.**

A federal writ of habeas corpus is available to a state prisoner only if he is being held in violation of the Constitution, laws, or treaties of the United States. Boyd v. Scott, 45 F.3d 876, 881 (5th Cir. 1994) (per curiam).  Pursuant to AEDPA, which is applicable to habeas petitions filed after its effective date, "federal habeas relief is only merited where the state court decision is both incorrect *and* objectively unreasonable."  Morrow v. Dretke, 367 F.3d 309, 313 (5th Cir. 2004) (emphasis in original) (citing Williams v. Taylor, 529 U.S. 362, 411 (2000)); 28 U.S.C. § 2254(d)(1); see also Riddle v. Cockrell, 288 F.3d 713, 716 (5th Cir. 2002).  The AEDPA's provisions "ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002) (citation omitted).

The Supreme Court has concluded that the "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1) have independent meanings.  Id. at 694 (citing Williams, 529 U.S. at 404-05).  The Bell Court explained:

> A federal court may issue the writ under the "contrary to"
> clause if the state court applies a rule different from the
> governing law set forth in our cases, or if it decides a
> case differently than we have done on a set of materially

> indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principles but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one.

Id. (citations omitted).

The Fifth Circuit has held that federal courts may not grant a writ of habeas corpus merely on the finding of an error by a state court, but rather only where a "state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts."  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (citation omitted).  A federal habeas court is to review only a state court's decision, and not the written opinion explaining its decision.  Anderson v. Johnson, 338 F.3d 382, 390 (5th Cir. 2003).  The state court's "ultimate decision" is to be tested for reasonableness, "not every jot of its reasoning."  Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001). Furthermore, a state court need not cite, or "even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'"  Mitchell v. Esparza, 540 U.S. 12, 16 (2003) (quoting Early v. Packer, 537

U.S. 3, 8 (2002)).

Absent a direct conflict with Supreme Court authority, habeas relief is only available if a state court decision is unreasonable.  Montoya v. Johnson, 226 F.3d 399, 404 (5th Cir. 2000).  A federal district court "must reverse when [it] conclude[s] that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'"  Gardner v. Johnson, 247 F.3d 551, 560 (5th Cir. 2001).  The focus of the "unreasonable application" test of § 2254(d) is "on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of evidence."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam).

Finally, "[t]he AEDPA requires that [the Court] presume correct the state court's findings of fact unless the petitioner 'rebut[s] the presumption of correctness by clear and convincing evidence.'"  Morrow, 367 F.3d at 315 (quoting 28 U.S.C.  § 2254(e)(1)); see also Jackson v. Johnson, 150 F.3d 520, 524 (5th Cir. 1998).  The presumption of correctness is accorded to adjudications made by a state court during review of a petitioner's state petition for habeas corpus relief.  See Morrow, 367 F.3d at 315.  The burden to rebut the presumption of correctness remains on petitioner even if the state "hearing was a 'paper' hearing and may not

have been full or fair."  Id. (citing Valdez v. Cockrell, 274 F.3d 941, 950-51 (5th

Cir. 2001)).  The Fifth Circuit has stated that the presumption of correctness also

applies to mixed questions of law and fact.  Valdez, 274 F.3d at 948 n.11 ("The

presumption of correctness not only applies to explicit findings of fact, but it also

applies to those unarticulated findings which are necessary to the state court's

conclusions of mixed law and fact.") (citations omitted).  Findings of fact may be

implied from conclusions of law.  See Goodwin v. Johnson, 132 F.3d 162, 183-84

(5th Cir. 1997).

**B.    Motion for Summary Judgment Standard of Review.**

Rule 56 of the Federal Rules of Civil Procedure applies to federal habeas

corpus cases.  Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000).  Summary

judgment is appropriate when there is no disputed issue of material fact, and one

party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A court

must consider the record as a whole by reviewing all pleadings, depositions,

affidavits, and admissions on file, and by drawing all reasonable inferences in

favor of the party opposing the motion.  Caboni v. Gen. Motors Corp., 278 F.3d

448, 451 (5th Cir. 2002).

The party seeking summary judgment bears the initial burden of informing

the court of the basis for its motion and identifying those portions of the pleadings,

12

depositions, answers to interrogatories, admissions on file, and affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d

958, 960 (5th Cir. 1988).  The controverted evidence must be viewed in the light

most favorable to the non-movant, and all reasonable doubts must be resolved

against the moving party.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to

the non-movant to show that summary judgment is not appropriate.  Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fields v. City of

S. Houston , 922 F.2d 1183, 1187 (5th Cir. 1991).  The non-movant cannot rest on

the mere allegations of the pleadings to sustain his burden, but must set forth

material controverted facts in the response to the motion for summary judgment.

Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49

(1986).  Summary judgment is proper if the non-movant fails to make a showing

sufficient to establish the existence of an element essential to his case on which he

bears the burden of proof.  ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438,

441 (5th Cir. 1995); Celotex, 477 U.S. at 322-23.

# VI.  DISCUSSION

## A.    Application of AEDPA's Deference to Petitioner's Claims.

To the extent petitioner raised similar claims in his state application for habeas relief, Texas state courts have already considered and rejected petitioner's claims.  Ex parte McCalvin, App. No. WR-66,679-01, at cover.  The Texas Court of Criminal Appeals denied his state habeas application without written order based on the findings of the trial court.  Id.  This denial of petitioner's application, even though it does not contain a written opinion, is not silent or ambiguous.  See Ex parte Torres, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits).  It is a decision on the merits and is entitled to the AEDPA's deference.  28 U.S.C. § 2254(d); see also Neal v. Puckett, 239 F.3d 683, 686 (5th Cir. 2001) (in the context of federal habeas proceedings, "adjudication 'on the merits' is a term of art that refers to whether a court's disposition of the case was substantive").

Thus, deference to the state court decision is mandated by § 2254(d).  See Morrow, 367 F.3d at 313.  Petitioner is not entitled to federal habeas relief unless he can demonstrate that the state court's adjudication on his claims was "contrary to, or involved an unreasonable application, of clearly established federal law" or was "based on an unreasonable determination of the facts."  28 U.S.C. § 2254(d).

14

**B.   Petitioner's Claims are Time Barred.**

    **1.   Statute of Limitations Pursuant to the AEDPA.**

The AEDPA provides a one-year statute of limitations for state prisoners to challenge a conviction by the filing of a federal petition for habeas corpus relief. Prieto v. Quarterman, 456 F.3d 511, 514 (5th Cir. 2006) (citing 28 U.S.C. § 2241(d)).  A petitioner has one year from the date his conviction becomes final to file his federal petition for habeas relief.  Id.  A properly filed state application for post-conviction relief tolls the AEDPA period of limitations for the entire time the state application is pending.  Id.  A state application for post-conviction relief is "*properly* filed when its delivery and acceptance are in compliance with the applicable laws and rules governing filings."  Artuz v. Bennett, 531 U.S. 4, 8 (2000) (italics in original).  A state application for post-conviction relief is pending "until the application has achieved final resolution through the State's post-conviction procedures."  Carey v. Saffold, 536 U.S. 214, 220 (2002).  While a state application for post-conviction relief generally tolls the AEDPA limitations period, a state application for habeas relief that is not filed within the federal limitations period does not toll the limitations period under § 2244(d)(2).  Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000).

Under "rare and exceptional circumstances," equitable tolling may also

apply pursuant to the AEDPA.  In re Wilson, 442 F.2d 872, 875 (5th Cir. 2006) (per curiam) (quoting Fierro v. Cockrell, 294 F.3d 674, 682 (5th Cir. 2002)). Equitable tolling may only apply "'where it is necessary to preserve a plaintiff's claims when strict application of the statute of limitations would be inequitable.'" Id. (quoting Fierro, 294 F.3d at 682).  Petitioner's failure to comply with the AEDPA's statute of limitations must result from "an extraordinary factor beyond the plaintiff's control" that prevents filing on time.  Felder v. Johnson, 204 F.3d 168, 174 (5th Cir. 2000).  Ignorance of the law is insufficient to warrant equitable tolling, even for a pro se petitioner.  See Fisher v. Johnson, 174 F.3d 710, 714 (5th Cir. 1999).

## 2.     Petitioner Has Not Shown He is Entitled to Tolling of the Limitations Period.

On September 26, 2005, the Texas Court of Criminal Appeals refused his petition for discretionary review.  McCalvin v. State, PD-1880-04 (Tex. Crim. App. 2005).  Thus, he had until September 26, 2006 to file a timely federal petition for habeas relief, including filing a state habeas application that would toll the AEDPA's limitations period.  On November 12, 2006, he filed a state application for habeas relief.  Ex parte McCalvin, App. No. WR-66,679-01, at 11.  The Texas Court of Criminal Appeals denied his application without written order based on the findings of the trial court on January 17, 2007.  Id. at cover.  He then filed this

16

action on January 30, 2007.  (D.E. 1, at 13).

Petitioner did not file his state application for habeas relief until after the federal limitations period expired, and therefore it did not toll the AEDPA's limitations period.  See Scott, 227 F.3d at 263.  He does not allege that any extraordinary circumstance beyond his control prevented him from filing his federal petition for habeas relief before the expiration of the limitations period.  He does not demonstrate cause for the default or prejudice resulting from the default.

It is respectfully recommended that petitioner's federal habeas petition is time barred pursuant to the AEDPA.

**C.    Petitioner's Claims of Ineffective Assistance of Counsel.**

Petitioner claims that he received ineffective assistance of counsel at his trial.  (D.E. 1, at 9-10).

**1.    Standard of Review Pursuant to Strickland v. Washington.**

The Fifth Circuit has determined that "under AEDPA a state court decision rejecting a *Strickland* claim must be accepted unless it was an unreasonable application of its teaching."  Granados v. Quarterman, 455 F.3d 529, 534 (5th Cir.), cert. denied, 127 S. Ct. 732 (2006).  To prevail on a claim of ineffective assistance of counsel, a state prisoner seeking federal habeas corpus relief bears the burden of showing that: (1) counsel's performance was deficient, and (2) that the deficient

performance resulted in actual prejudice.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  In order to show counsel's performance was deficient, petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  He must demonstrate that counsel's representation fell below an objective standard of reasonableness.  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).

Counsel's challenged conduct should be evaluated from the perspective of counsel at the time the conduct occurred.  Strickland, 466 U.S. at 690.  Due to the difficulties inherent in engaging in this analysis without being tainted by "the distorting effects of hindsight," a court's review should be highly deferential to counsel.  Id. at 689.  The reviewing court must give great deference to counsel's performance, strongly presuming that counsel has exercised reasonable professional judgment.  Id. at 690; see also Romero v. Lynaugh, 884 F.2d 871, 876 (5th Cir. 1989) (there is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance).

The Fifth Circuit has explained that due to "the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices."  Yohey v. Collins, 985 F.2d 222, 228 (5th Cir. 1993).  In addition, "[a] conscious and informed decision on trial tactics

18

and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Johnson v. Dretke, 394 F.3d 332, 337 (5th Cir. 2004) (citations omitted). However, a reviewing court need not consider the deficiency prong if it concludes that petitioner has failed to show actual prejudice. Strickland, 466 U.S. at 697; Amos v. Scott, 61 F.3d 333, 348 (5th Cir. 1995).

Under the second prong of the Strickland two-part test, petitioner may not simply allege, but must affirmatively prove actual prejudice, resulting from the ineffective assistance of counsel. Strickland, 466 U.S. at 693. Thus, he must affirmatively show that his counsel's actions deprived him of a fair trial. See Czere v. Butler, 833 F.2d 59, 63-64 (5th Cir. 1987). Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (habeas petitioner must show that the trial result was unreliable, or the proceeding was fundamentally unfair due to counsel's deficient performance).

Petitioner has the burden of proof under the Strickland test. See Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) (holding burden of proof is on petitioner in federal habeas proceeding). He must establish "actual prejudice as a

19

result of his counsel's ineffectiveness." Moody v. Johnson, 139 F.3d 477, 482 (5th

Cir. 1998) (citations omitted).  In addition, conclusory allegations of ineffective

assistance of counsel do not give rise to a constitutional claim for federal habeas

relief.  See Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000) ("Because

[petitioner] failed to set forth the nature of *any* of the errors trial counsel

purportedly failed to preserve and did not assert any resulting prejudice, the district

court properly determined that these three claims of ineffective assistance were

conclusory.").  The Fifth Circuit has further held that "'[i]n the absence of a

specific showing of how these alleged errors and omissions were constitutionally

deficient, and how they prejudiced [petitioner], ... we [can find] no merit to these

[claims].'"  Id. (quoting Barnard v. Collins, 958 F.2d 634, 642 (5th Cir. 1992)).

Finally, in order to prove that he is entitled to federal habeas relief due to

ineffective assistance of counsel, petitioner must overcome the presumption of

correctness to which the state court's findings are entitled.  See Schaetzle v.

Cockrell, 343 F.3d 440, 444 (5th Cir. 2003) ("It bears repeating that the test for

federal habeas purposes is *not* whether [petitioner made a showing under

*Strickland*, but] ... whether the state court's decision-that [the petitioner] did *not*

make the *Strickland*-showing-was contrary to, or an unreasonable application of,

the standards, provided by the clearly established federal law (*Strickland*), for

succeeding on his IAC claim.").

### 2. Petitioner's Claim That His Counsel Failed to Investigate His Case and Interview Witnesses Before Trial.

Petitioner claims that his counsel failed to properly investigate his case prior to trial. (D.E. 1, at 9). He asserts that because counsel was appointed by the court just twenty-eight days before trial after his previous counsel withdrew, his new counsel was unprepared for trial. Id. He also claims that counsel failed to interview the state's witnesses before trial. Id. at 10.

Petitioner raised these same allegations in his state application for habeas relief. In a sworn affidavit given in response to petitioner's state habeas claims, his counsel testified:

> While I was appointed to replace Petitioner's previous counsel Don Cartwright due to illness about a month before trial, the late Raul Rudden remained as second chair and was familiar with the case. In addition, I basically cleared my calendar and was about to devote a substantial amount of time to investigate and research Petitioner's case. I believe that all necessary investigation was completed prior to trial, and there was no necessity to hire a private investigator.

Ex parte McCalvin, App. No. WR-66,679-01, at 71. The state habeas court found that petitioner's counsel's affidavit was credible and the facts asserted in it were true, and that his claims of ineffective assistance of counsel were without merit. Id. at 89. The Texas Court of Criminal Appeals adopted this finding. Id., at cover.

21

The Fifth Circuit has determined that a trial counsel's failure to investigate witnesses did not establish a claim for ineffective assistance of counsel.  See, e.g., Duff-Smith v. Collins, 973 F.2d 1175, 1183 (5th Cir. 1992) (no ineffective assistance where attorney did not conduct a more thorough investigation of key prosecution witness where defendant failed to establish what such an investigation would establish); Washington v. Watkins, 655 F.2d 1346, 1357-65 (5th Cir. Unit A Sept. 1981) (no ineffective assistance in failing to interview ten of eleven named prosecution witnesses).  Petitioner has merely provided the Court with conclusory allegations that his counsel failed to investigate his case and failed to interview witnesses.  He does not state what he believes an additional investigation or interviewing the state's witnesses prior to trial would have revealed.  Such conclusory allegations cannot support a claim for habeas relief.  See Miller, 200 F.3d at 286.  It is respectfully recommended that petitioner's conclusory allegations that counsel failed to investigate his case and interview witnesses do not give rise to a claim for habeas relief, and do not overcome the presumption of correctness to which the state court's findings are entitled.

Petitioner has failed to overcome the presumption of correctness to which the State court's findings are entitled with clear and convincing evidence.  He has failed to demonstrate that the state courts' determination of his claims was contrary

22

to or an unreasonable application of clearly established Supreme Court precedent, or resulted in actual prejudice. Therefore, it is respectfully recommended that petitioner's claims that he received ineffective assistance of trial counsel because counsel failed to adequately investigate his case and failed to interview adverse witnesses are without merit.

### 3. Petitioner's Claim That Counsel Failed to Cross-Examine All of the State's Witnesses.

Petitioner claims that he received ineffective assistance of counsel because his counsel failed to cross-examine fifteen of the state's twenty-one witnesses. (D.E. 1, at 10). He does not specify what he believes cross-examinations would have revealed, or how he believes they would have bolstered his self-defense theory at trial.

Petitioner raised these same allegations in his state application for habeas relief. In an affidavit given in response to petitioner's state habeas claims, his counsel testified:

> Petitioner asserts that numerous witnesses were not cross-examined, although he fails to detail which witnesses and what areas of cross examination would have proven fruitful. Counsel believes that all witnesses were cross examined when cross examining them was the proper strategy to pursue because it would lead to potentially useful evidence.

Ex parte McCalvin, App. No. WR-66,679-01, at 72. The state habeas court found

23

that petitioner's counsel's affidavit was credible and the facts asserted in it were true, and that his claims of ineffective assistance of counsel were without merit.  Id. at 89.  The Texas Court of Criminal Appeals adopted this finding.  Id., at cover.

Petitioner has failed to present evidence that his counsel's failure to cross-examine all of the state's witnesses was ineffective assistance, and that a cross-examination would have rendered valuable information.  He has not shown that his counsel's strategic decision not to cross-examine the state's witnesses fell below an objective standard of reasonable assistance.  See Hughes v. Dretke, 412 F.3d 582, 589 (5th Cir. 2005) (citations omitted) (stating that to satisfy first prong of Strickland, "a petitioner must demonstrate that counsel's performance 'fell below an objective standard of reasonableness.'").  The Fifth Circuit has held that petitioner's "desire to have a specific defense theory presented does not amount to ineffective assistance on federal habeas review."  Coble v. Dretke, 444 F.3d 345, 351 (5th Cir. 2006) (addressing the petitioner's claim that counsel ineffectively cross-examined the state's witnesses).  Petitioner is challenging his trial counsel's overall strategy, to which this Court must give deference, and has not presented any reason why the state court's decision on this claim was unreasonable.  See id. at 352.

Petitioner has failed to demonstrate that his trial counsel rendered ineffective

assistance by failing to call witnesses, or failing to effectively cross-examine the state's witnesses.  Furthermore, he has wholly failed to show how the state court's adjudication of these claims was contrary to or an unreasonable application of Supreme Court authority.  Therefore, it is respectfully recommended that petitioner's claim that he received ineffective assistance of counsel because counsel did not cross-examine certain witnesses is without merit.

### 4. Petitioner's Claim That Counsel Improperly Withdrew a Motion to Suppress.

Petitioner claims that his counsel improperly withdrew a motion to suppress that had been granted pursuant to the efforts of his earlier counsel, who withdrew.  (D.E. 1, at 10).  He asserts that the motion had been granted to suppress two of his earlier statements to police that were illegally obtained.  Id.

The record reveals that, prior to trial, the trial judge granted a motion to suppress statements that petitioner made to police.  4 R.R. 34-37.  However, his doing so was conditioned upon the agreement that should petitioner testify to a different set of facts at trial, the tape recorded statements could then be used against him for impeachment purposes.  Id. at 35-36.  At trial, petitioner did in fact testify to a different set of facts than those that he had told officers in his earlier statements.  8 R.R. 134-46.  The trial record reveals that the tape recorded statements were voluntarily made.  7 R.R. 106-11.  He was given Miranda

25

warnings prior to making the recorded statements. Id. at 159.

By testifying to a different set of facts at trial, petitioner created the situation in which the recorded statements were used to impeach him. Whether or not his counsel withdrew the motion to suppress, the statements were admissible to impeach him. Therefore, he cannot show that prejudice resulted from his counsel's actions. Moreover, he cannot show that the state court's decision that counsel's actions did not cause him prejudice was unreasonable or contrary to federal law.

It is respectfully recommended that petitioner's claim that he received ineffective assistance of counsel because counsel withdrew a motion to suppress is without merit.

### 5.     Petitioner's Claim That Counsel Failed to Prepare Him to Testify.

Petitioner claims that his trial counsel rendered ineffective assistance because counsel failed to give him notice that he would testify and failed to prepare him to testify. (D.E. 1, at 10).

Petitioner raised this same claim in his state habeas application. In a sworn affidavit addressing his claim, his counsel stated:

> Petitioner's sole defense was that he killed the deceased in self defense after the deceased attacked him while they were smoking crack cocaine. Most if not all of all the evidence needed to convict the Petitioner was supplied by him in a series of confessions made on audiotape, although there was enough physical evidence

26

> and other witnesses to support a conviction as well.  As
> per the strategy agreed to between counsel and Petitioner,
> Petitioner <u>chose to testify</u> and assert that he acted in self
> defense.  <u>Counsel in no way compelled Petitioner to
> testify</u>, and pointed out that that [sic] the taking the stand
> would open the door to any previously suppressed
> statements made by the Petitioner.  Given the substantial
> amount of evidence linking the Petitioner to the murder,
> it appeared that self defense was the only viable defense
> strategy, and was consistent with the explanation given to
> counsel by Petitioner, who never asserted any other
> defense.  This necessitated having the Petitioner take the
> stand, as no other evidence was available to support a
> claim of self defense.  Petitioner asserts that he was
> unaware of my strategy as opposed to the strategy he
> discussed with his previous attorney, yet his previous
> counsel told me that he [was] pursuing the exact same
> strategy of self defense.  Exhibits spelling out the
> elements required for self defense were in fact already
> prepared prior to my taking over the case.

<u>Ex parte McCalvin</u>, App. No. WR-66,679-01, at 71-72 (emphasis added).  The

state court accepted counsel's recitation of the events surrounding petitioner's

conviction as true, and the Texas Court of Criminal Appeals adopted the state trial

court's finding.  <u>Id.</u> at 89; <u>id.</u> at cover.  Petitioner has not presented any new facts

to overcome the presumption of correctness to which the state court's factual

findings are entitled.  Furthermore, he has not shown how the state court's

adjudication of this claim was unreasonable or contrary to federal law.  He also has

not demonstrated that he suffered prejudice as a result of his counsel's actions.

    It is respectfully recommended that petitioner's claim that he received

ineffective assistance of counsel because counsel failed to inform him that he would testify and failed to prepare him to testify is without merit.

### 6.     Petitioner's Claim That Counsel Failed to Object to the Admission of Extraneous Offenses.

Petitioner claims that he received ineffective assistance of counsel because counsel failed to object to the admission of evidence regarding extraneous offenses.  (D.E. 1, at 10).

A petitioner is not entitled to federal habeas relief based on his counsel's failure to object if the evidence in question is admissible and not unconstitutional, and thus there is no likelihood that counsel's failure to object would have caused a different result at trial.  See Burnett v. Collins, 982 F.2d 922, 929-30 (5th Cir. 1993).  Admitting evidence of an extraneous offense may entail risks for a defendant but may be compelling in spite of the risks given the overall defense strategy.  See Hills v. Henderson, 529 F.2d 397, 401 (5th Cir. 1976).  Petitioner has failed to present any reason why this Court should find that the state court's resolution of this claim in his state habeas application was contrary to, or an unreasonable application of the applicable federal law.  Indeed, the extraneous offense evidence admitted at trial was related to the same course of events, established his motive, and much of the evidence admitted was in the form of statements that petitioner voluntarily made to law enforcement officials.  See 7

28

R.R. 108-159.

It is respectfully recommended that petitioner is not entitled to federal habeas relief for his claim that he received ineffective assistance of counsel because counsel failed to object to the admission of evidence regarding extraneous offenses.

### 7.      Petitioner's Claim That Counsel Failed to Request Extraneous Offense Instruction.

Petitioner claims that his counsel rendered ineffective assistance by failing to request an instruction regarding the evidence of extraneous offenses that was admitted at trial.  (D.E. 1, at 10).

Where the need for a limiting instruction is not so obvious that the trial court gives the instruction sua sponte, "[c]ounsel may refrain from requesting an instruction in order not to emphasize potentially damaging evidence, and for other strategic reasons."  United States v. Waldrip, 981 F.2d 799, 805 (5th Cir. 1993) (citation omitted).  In a similar case, the Fifth Circuit has "decline[d] to second guess counsel's [strategic] decision" to refrain from seeking a limiting instruction concerning an extraneous offense.  United States v. Barnes, 586 F.2d 1052, 1059 (5th Cir. 1978).  Petitioner's trial counsel made a strategic decision not to request an instruction regarding petitioner's extraneous offenses, and he has not shown that his counsel's strategic decision resulted in prejudice.  Petitioner has also not made

a clear showing that the state court's resolution of this claim was unreasonable or contrary to federal law.

It is respectfully recommended that petitioner's claim that counsel rendered ineffective assistance by failing to request an extraneous offense instruction is without merit.

### 8. Petitioner's Claim That Counsel Failed to Obtain an Expert Witness.

Petitioner claims that he received ineffective assistance of counsel because his counsel failed to call Dr. Sam Hill as an expert witness. (D.E. 1, at 10).

The Fifth Circuit has explained that "'[h]ypothetical or theoretical' testimony will not justify the issuance of a writ...." Martin v. McCotter, 796 F.2d 813, 819 (5th Cir. 1986). Furthermore, "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" Coble, 444 F.3d at 350 (citations omitted).

Counsel addressed petitioner's claim in the sworn affidavit he gave in connection with petitioner's state habeas application, and testified:

> Petitioner asserts that after taking over the case counsel failed to obtain a psychologist to examine the Petitioner and explain the effects of cocaine. While Petitioner's previous counsel may have filed a motion to authorize funds to hire an [sic] psychologist, he made no attempt to

> do so during the approximately one year time frame
> between the filing of the motion and his eventual
> withdrawal from the case.  I believe that there was no
> useful purpose in hiring a psychologist in view of the fact
> that Petitioner did not exhibit any signs of mental illness,
> and I don't see how testimony regarding the effects of
> cocaine would have supported his claim of self defense.

Ex parte McCalvin, App. No.  WR-66,679-01, at 72-73.  The state court adopted

counsel's assertions as true, and the Texas Court of Criminal Appeals relied on the

trial court's findings in its order denying petitioner's state habeas application.  Id.

at 89; id. at cover.  Petitioner has not presented any evidence to overcome the

presumption of correctness to which the state court's findings are entitled.

Petitioner has presented nothing to suggest that his counsel's decision not to

call Dr. Hill as an expert witness was not a legitimate trial strategy, or that Dr. Hill

would have testified favorably.  Without more, his conclusory allegation does not

prove deficient performance or actual prejudice, and does not give rise to a claim

for habeas relief.  See Czere, 833 F.2d at 63-64; see also Miller, 200 F.3d at 282.

He has also failed to show that the state court's adjudication of this claim was

contrary to federal law or unreasonable.

It is respectfully recommended that petitioner's claim that he received

ineffective assistance of counsel because counsel failed to call Dr. Sam Hill as an

expert witness is without merit.

**D.    Petitioner's Claim That the Jury Was Prejudiced Against Him by the Admission of Evidence Regarding Extraneous Offenses.**

Petitioner claims that he is entitled to federal habeas relief because the jury at his trial was unfairly prejudiced against him due to the admission of evidence relating to extraneous offenses.  (D.E. 1, at 9).

The Fifth Circuit has held that "[a]n extraneous offense may be admitted into evidence without violating the due process clause if the government makes a 'strong showing that the defendant committed the offense' and if the extraneous offense is 'rationally connected with the offense charged.'"  Story v. Collins, 920 F.2d 1247, 1254 (5th Cir. 1991) (citation omitted).  Here, petitioner does not deny that he committed the extraneous offenses that were admitted during his trial. Furthermore, the offenses are rationally connected with the offense charged because he was involved with drugs and other illegal activity on the night of the stabbing, which the prosecution used to establish motive.  He has not presented any evidence or new information to suggest that the state court's finding on this claim was unreasonable or contrary to federal law.  Indeed, his engaging in drug use with the victim is directly related to his theory of self-defense.

It is respectfully recommended that petitioner's claim that he received a constitutionally defective trial because the jury was unfairly prejudiced against him due to the admission of evidence relating to extraneous offenses is without merit.

32

**E.     Petitioner's Claims That His Life Sentence Is Unconstitutional.**

**1.     Petitioner's Claim That the Sentence Violates the Equal Protection Clause.**

Petitioner claims the automatic life sentence he received pursuant to Texas law violates the Equal Protection Clause because it creates a special class of defendants who, by their guilt of capital murder alone, have no opportunity to be sentenced by a jury.  (D.E. 1, at 11).  Texas law dictates a mandatory life sentence for a defendant convicted of capital murder if the state does not seek the death penalty.  Tex. Pen. Code § 12.31; Tex. Code Crim. Proc. art. 37.071 § 1.

The Fifth Circuit has stated "the general rule, to which there are few exceptions, is that a sentence within the statutory limits is not subject to constitutional challenge."  Williams v. State of Ala., 403 F.2d 1019, 1020 (5th Cir. 1968) (per curiam) (citation omitted); accord United States v. Menichino, 497 F.2d 935, 945 (5th Cir. 1974).  In addition, the Fifth Circuit has found that where a defendant claimed that the mandatory sentence he received constituted a violation of equal protection, there was no constitutional violation.  United States v. Rojas-Martinez, 968 F.2d 415, 419-20 (5th Cir. 1992) ("He argues that he has been denied his constitutional guarantees of due process and equal protection by the court's inability to depart downward from his minimum mandatory sentence.  We find no constitutional violation.") (citing Chapman v. United States, 500 U.S. 453

(1991); <u>Nebbia v. New York</u>, 291 U.S. 502, 537 (1934)).  A sentencing scheme does not violate equal protection rights so long as it "does not discriminate on the basis of a suspect classification," and the sentencing scheme "bears a rational relationship to the legitimate purpose of enforcing" the law.  <u>Id.</u> at 420.

Texas' capital murder punishment scheme does not discriminate on the basis of a suspect classification, and it bears a rational relationship to the legitimate purposes of preventing crime and lowering recidivism.  Petitioner has not presented any evidence to the contrary, nor has he shown that the state court's adjudication of this claim was contrary to federal law or unreasonable.

It is respectfully recommended that petitioner's claim that the mandatory life sentence he received violates equal protection is without merit.

**2.      Petitioner's Claim That the Sentence Violates His Due Process Rights and Is Unconstitutional Because the Jury Did Not Have the Opportunity to Consider Mitigating Circumstances.**

Petitioner claims that the automatic life sentence he received pursuant to Texas law violates his due process rights.  (D.E. 1, at 11).  Moreover, he claims that the automatic life sentence he received pursuant to Texas law is unconstitutional because it failed to allow him to be sentenced by the jury and for the jury to have the opportunity to consider mitigating circumstances that could warrant a lesser sentence.  (D.E. 1, at 9).

34

The Fifth Circuit has determined that because "the Constitution does not require individualized sentences," the establishment of mandatory sentences for certain offenses, which may prevent the consideration of individualized mitigating circumstances in sentencing, is permissible.  United States v. Guajardo, 950 F.2d 203, 206 (5th Cir. 1991) (citations omitted).  Thus, mandatory sentences do not violate a defendant's due process rights.  Id.; Rojas-Martinez, 968 F.2d at 419-20. Because the Constitution does not require individualized sentences, the use of mitigating factors in sentencing is not a right guaranteed by the Constitution. United States v. White, 869 F.2d 822, 825 (5th Cir. 1989) (per curiam) (citing Lockett v. Ohio, 438 U.S. 586, 602 (1978)).  Therefore, petitioner's claim that the automatic life sentence he received violates his due process rights fails to state a constitutional violation that would entitle him to federal habeas relief.

Accordingly, it is respectfully recommended that petitioner's claim that his sentence violates his due process rights is without merit.  It is further respectfully recommended that his claim that the jury did not have an opportunity to consider mitigating circumstances is without merit.

### 3.   Petitioner's Claim That the Sentence Violates the Eighth Amendment.

Petitioner also claims that the automatic life sentence he received pursuant to Texas law violates the Eighth Amendment's prohibition on cruel and unusual

punishment.  (D.E. 1, at 11).

Petitioner's contention has been soundly rejected by the Supreme Court, which has held that a mandatory life sentence following conviction for a particular crime does not violate the Eighth Amendment's prohibition on cruel and unusual punishment.  Harmelin v. Michigan, 501 U.S. 957, 994-995 (1992).  The Harmelin Court explained:

> Petitioner claims that his sentence violates the Eighth Amendment for a reason in addition to its alleged disproportionality.  He argues that it is "cruel and unusual" to impose a mandatory sentence of such severity, without any consideration of so-called mitigating factors....  He apparently contends that the Eighth Amendment requires [the state] to create a sentencing scheme whereby life in prison without possibility of parole is simply the most severe of a range of available penalties that the sentencer may impose after hearing evidence in mitigation and aggravation.
>
> As our earlier discussion should make clear, this claim has no support in the text and history of the Eighth Amendment.  Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history.  As noted earlier, mandatory death sentences abounded in our first Penal Code.  They were also common in the several States-both at the time of the founding and throughout the 19th century.  There can be no serious contention, then, that a sentence which is not otherwise cruel and unusual becomes so simply because it is "mandatory."

Id. (citations omitted).

36

It is respectfully recommended that petitioner's claim that his mandatory life sentence for capital murder violates the Eighth Amendment is without merit.

**4.     Petitioner's Claim That the Sentence Violates the Privileges and Immunities Clause.**

Finally, petitioner claims that the automatic life sentence he received violates the privileges and immunities clause of the Constitution.  (D.E. 1, at 11).

The Supreme Court has held that "[t]he object of the Privileges and Immunities Clause is to 'strongly ... constitute the citizens of the United States one people,' by 'plac[ing] the citizens of each State upon the same footing with citizens of other states, so far as the advantages resulting from citizenship in those States are concerned.'"  Lunding v. N.Y. Tax Appeals Tribunal, 522 U.S. 287, 296 (1998) (citation omitted).  The Fifth Circuit has established that the privileges and immunities clause "does not abolish state court prosecutions."  Falkowski v. Mayo, 173 F.2d 742, 742 (5th Cir. 1949) (per curiam).  Petitioner cites no case law in support of his assertion that his automatic sentence is unconstitutional because it violates the privileges and immunities clause, and indeed, fails to explain how the clause applies to his circumstances.

It is respectfully recommended that petitioner's claim that his life sentence is unconstitutional because it violates the privileges and immunities clause is without merit.

37

## VII.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Fifth Circuit from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although petitioner has not yet filed a notice of appeal, it is respectfully recommended that this Court nonetheless address whether he would be entitled to a certificate of appealability.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may sua sponte rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability "may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims

38

debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  This standard requires a § 2254 petitioner to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  <u>United States v. Jones</u>, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon <u>Slack</u>, 529 U.S. at 483).

As to claims that a district court rejects solely on procedural grounds, a petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right <u>and</u> that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  <u>Slack</u>, 529 U.S. at 484 (emphasis added).

Here, it is respectfully recommended that reasonable jurists could not debate the denial of petitioner's § 2254 petition on substantive or procedural grounds nor find that the issues presented are adequate to deserve encouragement to proceed. <u>Miller-El</u>, 537 U.S. at 327 (citing <u>Slack</u>, 529 U.S. at 484).  Accordingly, it is respectfully recommended that the Court find that petitioner is not entitled to a certificate of appealability as to his claims.

## VIII.  RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that respondent's motion for summary judgment, (D.E. 18), be granted, and that petitioner's petition

for writ of habeas corpus be dismissed with prejudice.  It is further respectfully recommended that petitioner be denied a certificate of appealability.

Respectfully submitted this 10th day of July 2007.


BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 8(b) of the Rules Governing § 2254 Cases; Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 02-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).